UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALLEN WALKER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 17-3012** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL** | **SECTION I** |

## ORDER & REASONS

Before the Court is a motion[1] for partial summary judgment filed by defendants, BP America Production Company; BP Exploration & Production, Inc.; BP p.l.c.; Halliburton Energy Service, Inc.; Transocean, Ltd.; Transocean Deepwater, Inc.; Transocean Holdings, LLC; Transocean Offshore Deepwater Drilling, Inc.; and Triton Asset Leasing GmbH (collectively, "defendants"). Plaintiffs, Allen Walker ("Walker") and Roxanne Walker (collectively, "plaintiffs") oppose[2] the motion. Defendants filed a reply[3] in support of the motion. For the reasons that follow, the Court will grant the motion in part and deny the motion in part.

### I. BACKGROUND

The instant action is a "B3" case arising out of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico.[4] B3 cases involve "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response

---

[1] R. Doc. No. 51.
[2] R. Doc. No. 54.
[3] R. Doc. No. 57.
[4] R. Doc. No. 6 ("Severing 780 Cases in the B3 Pleading Bundle and Re-allotting Them Among the District Judges of the Eastern District of Louisiana") (Barbier, J.).

(e.g., dispersant)." *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021) (Barbier, J.). During the course of the MDL proceedings, Judge Barbier approved the Deepwater Horizon Medical Benefits Class Action Settlement Agreement, which included a Back-End Litigation Option ("BELO") permitting certain class members to sue BP for later-manifested physical conditions. *Id.* at *2. The B3 plaintiffs, by contrast, either opted out of the class action settlement agreement or were excluded from its class definition. *Id.* at *10 n.3. In any event, "B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[5]

Allen Walker is a scuba diver who engaged in underwater photography and videography during and after the Deepwater Horizon Oil Spill.[6] He alleges that his first exposure occurred on May 20, 2010, and that he continued diving during the oil spill due to representations made by BP that the Gulf waters were safe.[7]

In the proposed pretrial order, plaintiffs allege that Walker's medical issues include "gastrointestinal problems including nausea, blood in urine and stool; neurological damage including Trigeminal neuralgia, elevated levels of toxic chemicals in the blood, decaying nails, vision loss and conjunctivitis, respiratory problems including wheezing with shortness of breath, bronchitis, pneumonia,

---

[5] R. Doc. No. 6, at 53 ("Case Management Order for the B3 Bundle") (Barbier, J.); *see id.* at 54 (noting that "proving causation will be a key hurdle for the B3 plaintiffs.").
[6] R. Doc. No. 1, at 17 ¶¶ 82–83.
[7] *Id.* at 17 ¶ 83.

burning of lungs, skin diseases including Melanoma, rashes, bruising, dermatitis, eczema and psoriasis, fibromas, [Plantar] Fibromatosis, and bursitis."

complaint, plaintiffs allege that Walker's "symptoms include chronic respiratory challenges of shortness of breath and throat irritation; neurologic compromise with headaches, dizziness, mental fog, sleepless nights, depression and anxiety; chronic gastrointestinal symptoms of nausea, vomiting and diarrhea with blood in the stool; skin compromise with rashes, bruising and mobile small lumps under the skin; and systemic complaints of extreme fatigue and flu-like symptoms."[8]

Plaintiffs' expert, Dr. Gerald Cook, has submitted separate reports as to general and specific causation pertaining to Walker's claimed injuries.[9] In their motion for partial summary judgment, defendants submit that plaintiffs are required to offer admissible expert testimony as to specific causation for all of Walker's injuries.[10] Defendants contend that plaintiffs have only submitted sufficient specific causation expert testimony as to Walker's chronic dermatitis, and they therefore argue that the Court should enter summary judgment dismissing Walker's claims as to all other injuries.[11] Plaintiffs do not contest defendants' argument that they have only presented sufficient specific causation expert testimony as to chronic dermatitis, but respond that expert testimony is not required to establish specific causation with

---

[8] R. Doc. No. 59, at 8; *see also* R. Doc. No. 1, at 18 ¶ 84 (complaint); R. Doc. No. 53-3, at 12–14 (expert report).
[9] R. Doc. Nos. 53-3, 53-4.
[10] R. Doc. No. 53-1, at 6.
[11] *Id.* at 6–7.

respect to Walker's injuries, because they are temporary and acute forms of pain and suffering, which are within the layperson's common knowledge.[12]

## II. STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory

---

[12] R. Doc. No. 54, at 2.

allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

### III.  LAW AND ANALYSIS

B3 plaintiffs have the burden of proving that "the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response." *In re Oil Spill by Oil Rig "Deepwater Horizon"*, 2021 WL 6053613, at *11; *accord Perkins v. BP Expl. & Prod., Inc.*, No. 17-4476, 2022 WL 972276, at *2 (E.D. La. Mar. 31, 2022) (Milazzo, J.). Under maritime law, "[l]egal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." *Moreta v. BP Expl. & Prod. Inc.*, No. 19-01204, 2020 WL 6822534, at *2 (E.D. La. Nov. 20, 2020)

(Milazzo, J.) (quoting *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992)).

"Courts use 'a two-step process in examining the admissibility of causation evidence in toxic tort cases. First, the district court must determine whether there is *general causation*. Second, if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible *specific-causation* evidence.'" *Seaman v. Seacor Marine, LLC*, 326 F. App'x 721, 722 (5th Cir. 2009) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)) (emphasis in original). "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Id.* (quoting *Knight*, 482 F.3d at 351).

With respect to general causation, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Id.* (quoting *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)). "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation." *Id.*

While it is well-established that expert testimony is required to establish general causation in toxic tort cases, the Fifth Circuit has not definitively addressed whether, and to what extent, expert testimony is required to establish specific causation in such cases. Notably, the Eleventh Circuit recently held that the "plaintiff

must establish both general and specific causation through admissible, reliable expert testimony" in a toxic tort action arising from the Deepwater Horizon Oil Spill. *In re Deepwater Horizon BELO Cases*, 2022 WL 104243, at *2 (11th Cir. Jan. 11, 2022) (citation omitted). However, the Fifth Circuit has not yet foreclosed the possibility that, at least in some circumstances involving toxic torts, "[e]xpert testimony regarding general causation combined with specific evidence regarding the nature of the decedent's exposure may be sufficient[.]" *Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2017 WL 889083, at *3 (E.D. La. Mar. 6, 2017) (Africk, J.).

In their motion for partial summary judgment, defendants contend that plaintiffs must introduce admissible expert evidence to support medical causation, which consists of three elements: a diagnosis, general causation, and specific causation.[13] Defendants submit that Walker has only submitted expert testimony addressing all three elements with respect to his claim for chronic dermatitis, whereas the remainder of his health problems "lack one or more of the three elements."[14] Defendants also note that they intend to challenge the reliability of plaintiffs' general causation expert report.[15] Thus, consideration of general causation must be deferred to trial.

Plaintiffs respond that "specific causation expert testimony is not necessary here because Walker's other complained-of injuries are acute, temporary forms of

---

[13] R. Doc. No. 51-1, at 6.
[14] *Id.* at 6–7.
[15] R. Doc. No. 57, at 7.

pain and suffering for which the issue of the causal relation to exposure to oil and/or dispersants is 'within the layperson's common knowledge.'"[16]

The factual record before the Court provides little detail as to when Walker developed each of his claimed health issues and the duration of said issues. Without such information, the Court cannot definitively opine on whether each of Walker's alleged health issues requires expert testimony to establish specific causation. Accordingly, resolution as to some of Walker's alleged health issues must be reserved for trial.

To the extent that Walker intends to allege that any of his exposure-related health problems persisted for an extended period of time, such problems cannot be deemed to be "acute" or "temporary." Indeed, notwithstanding plaintiffs' attempt to portray all of Walker's health issues as temporary and acute in their opposition memorandum, plaintiffs' complaint and expert report explicitly designate some of Walker's health problems as "chronic," including "chronic respiratory challenges of shortness of breath and throat irritation," "chronic gastrointestinal symptoms of nausea, vomiting and diarrhea with blood in the stool," and "chronic dermatitis."[17] Additionally, plaintiff complains of conditions such as melanoma, trigeminal neuralgia, and plantar fibromatosis, which are presumably neither temporary, nor within the common understanding of a layperson.

---

[16] R. Doc. No. 54, at 2 (quoting *Guidry v. Dow Chem. Co.*, No. 19-12233, 2021 WL 4460505, at *2 (E.D. La. Sept. 29, 2021) (Feldman, J.)).
[17] R. Doc. No. 1, at 18 ¶ 84; R. Doc. No. 53-3, at 12–14.

To the extent that Walker intends to allege that he suffered some of his claimed health issues concurrently with, or immediately after, exposure, it may be the case that "[e]xpert testimony regarding general causation combined with specific evidence regarding the nature of the decedent's exposure may be sufficient[.]" *Bell*, 2017 WL 889083, at *3.[18] Consider, for instance, *Guidry v. Dow Chemical Co.*, No. 19-12233, 2021 WL 4460505 (E.D. La. Sept. 29, 2021) (Feldman, J.), in which the Court concluded that plaintiffs' "eyes, nose, or throat irritation, coughing, choking or gagging, or nausea, or headaches, dizziness, trouble breathing, or other respiratory issues," which arose during and after the release of ethyl acrylate from a chemical facility, were "all forms of temporary pain and suffering." *Id.* at *2. Because such injuries were "within the layperson's common knowledge," the Court concluded that expert testimony as to specific causation was not necessary. *Id.* at *2–3.[19]

---

[18] Defendants distinguish *Bell* on the basis that it was a mesothelioma case, wherein "the causative connection between asbestos exposure and mesothelioma is widely known and accepted," which defendants contend is "just the opposite from what is known about exposure to oil and dispersants, where general causation is highly contested." R. Doc. No. 57, at 5. It may ultimately be the case that mesothelioma cases are distinguishable on issues of causation evidence because "almost no other causes of mesothelioma [besides asbestos] exist in the United States." *Yarbrough v. Hunt S. Grp., LLC*, 2019 WL 4392519, at *6 (S.D. Miss. Sept. 12, 2019) (citing *Michel v. Ford Motor Co.*, No. 18-4738, 2019 WL 118008, at *5 (E.D. La. Jan. 7, 2019) (Vance, J.)). However, defendants have not raised the sufficiency of plaintiffs' general causation evidence in the instant motion. Thus, the Court must defer analysis as to whether plaintiffs' general causation evidence is sufficient, in conjunction with evidence as to Walker's exposure, to permit a layperson to conclude that defendants' negligence was the legal cause of Walker's injuries.

[19] Defendants note that the Court in *Guidry* was applying Louisiana law rather than maritime law, and they suggest that Louisiana's rule is more "relaxed" than that of maritime law, although they do not cite Fifth Circuit cases establishing this to be the case. R. Doc. No. 57, at 5. While this Court applies maritime law in the instant matter, it is not precluded from considering the Court's analysis in *Guidry* as

However, to the extent that Walker alleges chronic medical conditions—except depression and anxiety, as detailed below—plaintiffs must present expert testimony supporting specific causation. This holding extends not only to injuries impliedly or explicitly designated as chronic conditions (e.g., melanoma, plantar fibromatosis, chronic dermatitis, and chronic respiratory issues), but also to symptoms such as coughing or nausea, insofar as Walker alleges that such symptoms persisted for extended periods of time. Because plaintiffs have presented sufficient specific causation expert testimony as to chronic dermatitis, they may proceed with their claim as to chronic dermatitis at trial.

With respect to depression and anxiety, which plaintiffs allege that Walker suffers from,[20] it is unclear whether plaintiffs intend to allege that these problems result *directly* from exposure—in the sense that the chemicals to which Walker was exposed caused physical neurological changes giving rise to these problems—or that these problems result *indirectly* from exposure—in the sense that Walker experiences depression and anxiety due to the hardship of his alleged ordeal with exposure and various physical injuries and conditions.

If alleging the former, Walker would need expert testimony establishing specific causation (in addition to general causation). However, if alleging the latter, such allegations would sound more in the register of damages for "mental pain and suffering," or possibly "[l]oss of enjoyment of life"—both of which plaintiffs plead in

---

instructive, in the absence of Fifth Circuit precedent indicating that maritime law necessitates a different mode of analysis.
[20] R. Doc. No. 1, at 18 ¶ 84.

their complaint.[21] The parties did not address this issue with any specificity.[22] The Court will deny summary judgment as to mental health conditions, including depression and anxiety.[23] Accordingly,

**IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Whether plaintiffs can request damages for certain alleged medical conditions will depend on the testimony presented at trial.

New Orleans, Louisiana, June 15, 2022.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[21] R. Doc. No. 1, at 31.

[22] In a recent Jones Act case in which the plaintiff claimed to have depression resulting from the accident and personal injury at issue, the Fifth Circuit reiterated its "unwillingness to 'hold that medical evidence or corroborating testimony is always required for an award of mental anguish damages.'" *Naquin v. Elevating Boats, LLC*, 744 F.3d 927, 940 n.65 (5th Cir. 2014), *overruled on other grounds by Sanchez v. Smart Fabricators of Texas, LLC*, 997 F.3d 564 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1046 (5th Cir. 1998)). In the absence of expert testimony, the court found it sufficient that the plaintiff's "own testimony regarding his mental anguish was supported by the testimony of his wife, his visits to doctors and social workers, and his prescription use of an anti-depressant drug following the accident." *Id.*

[23] Plaintiffs also allege that Walker suffers from "sleepless nights." R. Doc. No. 1, at 18 ¶ 84. The exact nature of this health problem is not clear to the Court at this time. However, it seems possible that this too might fall within "mental pain and suffering" or "loss of enjoyment of life." Accordingly, plaintiffs may proceed to trial with this claim.