## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**ALLEN WALKER, ET AL.**                                       CIVIL ACTION

**VERSUS**                                                            No. 17-3012

**BP EXPLORATION & PRODUCTION**                    SECTION I
**INC., ET AL.**

### ORDER & REASONS

Before the Court is a motion[1] *in limine* to exclude the opinions of plaintiffs'

medical causation expert, Dr. Jerald Cook ("Cook"), filed by defendants, BP

Exploration & Production, Inc.; BP America Production Company; BP p.l.c.;

Transocean Ltd.; Transocean Offshore Deepwater Drilling, Inc.; Transocean

Deepwater, Inc; Transocean Holdings, LLC; Triton Asset Leasing GmbH; and

Halliburton Energy Services, Inc. (collectively, "defendants"). Defendants have also

filed a motion[2] for summary judgment contending that, if the Court grants

defendants' motion *in limine*, then summary judgment will also be warranted because

plaintiffs Allen Walker ("Walker") and Roxanne Walker (collectively, "plaintiffs"), will

lack expert testimony necessary to prove causation. Plaintiffs oppose both motions.[3]

Also before the Court is plaintiffs' motion[4] to supplement the expert report of

Dr. Rachael Jones ("Jones"), and plaintiffs' "motion for admission of plaintiff's expert

---

[1] R. Doc. No. 83.
[2] R. Doc. No. 84.
[3] R. Doc. Nos. 88, 89.
[4] R. Doc. No. 82.

opinions because of BP defendants' spoliation of evidence of plaintiff's exposure."[5] Defendants oppose both motions.[6]

For the reasons below, the Court grants defendants' motion *in limine*, denies plaintiffs' motion to supplement, denies plaintiffs' motion for admission of their expert opinions, and grants defendants' motion for summary judgment.

## I.     BACKGROUND

The instant action is a "B3" case arising out of the 2010 Deepwater Horizon oil spill in the Gulf of Mexico.[7] B3 cases involve "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)." *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *9 (E.D. La. Apr. 1, 2021) (Barbier, J.). In the course of the MDL proceedings, Judge Barbier approved the Deepwater Horizon Medical Benefits Class Action Settlement Agreement, which included a Back-End Litigation Option ("BELO") permitting certain class members to sue the defendants for later-manifested physical conditions. *Id.* at *2. The B3 plaintiffs, by contrast, either opted out of the class action settlement agreement or were excluded from its class definition. *Id.* at *10 n.3. To prevail on their claims, the

---

[5] R. Doc. No. 85.

[6] R. Doc. No. 87; R. Doc. No. 100.

[7] R. Doc. No. 6 ("Order Severing 780 Cases in the B3 Pleading Bundle and Re-allotting Them Among the District Judges of the Eastern District of Louisiana") (Barbier, J.).

"B3 plaintiffs must prove that the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[8]

Walker was employed in BP's "Vessels of Opportunity" program, which performed response activities during the oil spill.[9] He alleges that he was exposed to oil and dispersants during those response activities.[10] Walker is also "a long time champion scuba diver who often spear-fishes and also engages in underwater photography and videography in the Gulf of Mexico."[11] He alleges that "[d]ue to representations made in the press by BP that Gulf waters were safe," he continued diving in the Gulf during the oil spill and came into contact with hydrocarbons and dispersants.[12] He further alleges that after this exposure, he began experiencing a variety of adverse health effects.[13] Roxanne Walker, Walker's spouse, asserts a loss of consortium claim based on Walker's injuries.[14]

Like other B3 plaintiffs, Walker provides medical causation analysis completed by Cook to support his claim that exposure to oil and dispersants caused his health problems.[15] In many B3 cases, Cook has issued only a general causation report. In

---

[8] *Id.* at 53; *see also id.* at 54 (noting that "proving causation will be a key hurdle for the B3 plaintiffs").

[9] R. Doc. No. 83-2, at 3.

[10] *Id.* at 4.

[11] R. Doc. No. 1, ¶ 82.

[12] *Id.* ¶ 83.

[13] In the original complaint, Walker alleged that these health effects included respiratory difficulties; neurological effects including headaches, dizziness, mental fog, sleepless nights, depression and anxiety; chronic gastrointestinal symptoms; skin issues including rashes, bruising and "mobile small lumps under the skin"; and fatigue and flu-like symptoms. *Id.* ¶ 84.

[14] *Id.* ¶ 152.

[15] R. Doc. No. 83-5.

Walker's case, Cook has issued both a general causation report and a specific causation report.

BP previously moved for partial summary judgment in this case,[16] arguing that Walker had "only submitted sufficient specific causation expert testimony as to [his] chronic dermatitis."[17] The Court granted that motion in part and denied it in part, holding that expert testimony is required to support specific causation for alleged chronic medical conditions, or those that Walker alleges "persisted for extended periods of time."[18] The Court noted, however, that "[t]o the extent that Walker intends to allege that he suffered some of his claimed health issues concurrently with, or immediately after, exposure," expert testimony as to general causation plus specific evidence regarding the nature of his exposure might be sufficient.[19] The Court determined that Walker had presented sufficient specific causation expert testimony supporting his chronic dermatitis allegation,[20] but reserved decision as to which of the remaining health issues would require expert testimony to establish specific causation.[21] The Court also noted that defendants had indicated that they planned to challenge the reliability of Cook's general causation report, and therefore reserved decision on the issue of whether Walker had presented sufficient expert evidence as

---

[16] R. Doc. No. 51.
[17] R. Doc. No. 69, at 3.
[18] *Id.* at 10.
[19] *Id.* at 9.
[20] *Id.* at 10.
[21] *Id.* at 8.

to general causation for all alleged ailments.[22] Defendants now ask this Court to exclude Cook's general causation report as unhelpful and unreliable.

Cook is a retired Navy physician, a fellow of the American College of Occupational and Environmental Medicine, and is board certified in occupational medicine, public health, and general preventative medicine.[23]

Cook's general causation report utilized a "general causation approach to determine if a reported health complaint can be from the result of exposures sustained in performing cleanup work" and to assess "the likelihood that occupational exposures that occurred during work in oil spill cleanup caused disease, contributed to the development of disease, affected the severity of disease, or exacerbated pre-existing disease that workers have associated with potential exposures."[24]

Cook's report is organized into five chapters. The first chapter outlines Cook's qualifications. The second chapter provides background on the *Deepwater Horizon* oil spill.

The third chapter describes Cook's methodology. The first step, as described in Cook's report, is to "review and analyze the available scientific literature to determine the strength of an association between environmental exposure and a health effect."[25] Cook states that, as part of this literature review, he selected the studies included in his general causation analysis "based on the quality of the study and study design."[26]

---

[22] *Id.* at 7.
[23] R. Doc. No. 83-5, at 5.
[24] *Id.*
[25] *Id.* at 17.
[26] *Id.* at 19.

Finally, Cook applies the Bradford Hill factors to the selected studies "to determine if a cause-and-effect relationship exists or not."[27] The Bradford Hill factors, which environmental toxicologists employ for causation analysis, include: (1) temporal relationship; (2) strength of the association; (3) dose-response relationship; (4) replication of findings; (5) biological plausibility; (6) consideration of alternative explanations; (7) cessation of exposure; (8) specificity of the association; and (9) consistency with other knowledge. *Grant v. BP Expl. & Prod., Inc.*, No. 17-4334, 2022 WL 2467682, at *4 (E.D. La. July 6, 2022) (Vance, J.) (citing Fed. Judicial Ctr., *Reference Manual on Scientific Evidence* 600 (3d ed. 2011)). Cook explains that "[d]rawing causal inferences after finding an association and considering these factors requires judgment and analysis to determine if a cause-and-effect relationship exists or not."[28]

The fourth chapter of Cook's report recounts the history of oil spills and related clean-up efforts and analyzes prior studies on the health effects associated with exposure to oil.[29] These studies include the National Institute for Occupational Safety and Health's ("NIOSH") 2011 final health hazard evaluation ("HHE") report on the Deepwater Horizon oil spill, the Deepwater Horizon oil spill Coast Guard cohort study, and the Gulf Long-Term Follow-Up study ("GuLF Study"). Cook, following a

---

[27] *Id.* at 24. "Sir Bradford Hill was a world-renowned epidemiologist who articulated a nine-factor set of guidelines in his seminal methodological article on causality inferences." *Jones v. Novartis Pharm. Corp.*, 234 F. Supp. 3d 1244, 1267 (N.D. Ala. 2017) (internal citations and quotations omitted).
[28] R. Doc. No. 83-5, at 24.
[29] *Id.* at 32.

close analysis of the above studies, concludes that there is a relationship between oil exposure among clean-up workers and a number of dermal, ocular, neurological, and respiratory conditions.[30]

Finally, the fifth chapter contains Cook's opinions on general causation for four categories of medical conditions: (1) respiratory conditions; (2) dermal conditions; (3) ocular conditions; and (4) cancers. Ultimately, Cook concludes that a "[g]eneral causation analysis indicates that these acute and chronic [respiratory, dermal, ocular] conditions can occur in individuals exposed to crude oil, including weathered crude oil, during oil spill response and cleanup work."[31]

---

[30] "During the response and cleanup activities, workers complained of various acute medical symptoms, including nasal congestion, cough, shortness of breath, headaches, nausea, dizziness, dermal irritation or rash, itchy and sore eyes, as well as heat-related conditions." *Id.* at 36 (discussing the results of the NIOSH HHE report); "Neurological symptoms were also noted to have a significant relationship in oil-exposed responders, including headaches, lightheadedness, difficulty concentrating, numbness/tingling sensation, blurred vision, and memory loss or confusion . . . . The cohort was also determined to have demonstrated a significant association between oil-exposed responders and hypertension, as well as chest pain, mitral valve disorders, sudden heartbeat changes, and palpitations . . . ." *Id.* at 44 (describing the "longitudinal data that shows a significant relationship between oil-exposed responders and respiratory symptoms" from the ongoing Coast Guard cohort study); Symptoms, such as coughing, wheezing, burning in the nose, throat, lungs, and eyes "had a positive association with both direct work with dispersants and indirect work with dispersants . . . ." *Id.* at 59 (discussing the results of the GuLF Study).

[31] *Id.* at 87, 92, 99. With respect to cancers, Cook notes that "[m]ost of the studies that have been done . . . show increased prevalence in acute symptoms . . . ." However, he also notes that, because of the differing latency periods for various cancers, "[a]t this time there are no epidemiology studies that show exposures to crude oil, weathered crude oil, or dispersants cause cancer." *Id.* at 99–102.

## II.    STANDARDS OF LAW

### A.    Motion *in Limine*

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As for determining relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue

without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.). The Court applies a preponderance of the evidence standard when performing its gatekeeping function under *Daubert*. *See Daubert*, 509 U.S. at 592 n.10. And the Court is not bound by the rules of evidence—except those rules concerning privileges—when doing so. *See id.*

## B.      Untimely Expert Report

Federal Rule of Civil Procedure 16(b) governs requests to modify the Court's scheduling order, including requests to file expert reports after the scheduling order's deadline. The Fifth Circuit has instructed that four factors should be considered when determining whether the report of a late-designated expert witness should be allowed: (1) the importance of the proposed testimony, (2) the party's explanation for its failure to comply with the court's scheduling order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice. *Harmon v. Georgia Gulf Lake Charles LLC*, 476 F. App'x 31, 36 (5th Cir. 2012). A district court has "broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).

### C.    Spoliation of Evidence

"Spoliation is the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Fairley v. BP Expl. & Prod. Inc.*, No. 17-3988, 2022 WL 16731817, at *3 (E.D. La. Nov. 3, 2022) (Ashe, J.) (quotations and citations omitted). Spoliation is a sanctionable abuse of the litigation process. *See Coastal Bridge Co., LLC v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020).

"A spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Id.* at 574. "A plaintiff alleging spoliation must establish that the defendant *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use." *Id.* at 573 (emphasis in original). Though parties have a duty to preserve evidence, courts consistently hold that "the duty to preserve evidence does not include the duty to create evidence." *Fairley*, 2022 WL 16731817, at *3 (quoting *De Los Santos v. Kroger Tex., LP*, No. 14-3086, 2015 WL 3504878, at *6 n.4 (N.D. Tex. June 3, 2015)) (further citations omitted).

### D.    Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be

presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

If the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must then articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). These facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

## III.   ANALYSIS

### A.   Defendants' Motion *in Limine*

B3 plaintiffs have the burden of proving that "the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response." *In re Oil Spill by Oil Rig "Deepwater Horizon"*, 2021 WL 6053613, at *11; *accord Perkins*

13

*v. BP Expl. & Prod., Inc.*, No. 17-4476, 2022 WL 972276, at *2 (E.D. La. Mar. 31, 2022) (Milazzo, J.).

When determining the admissibility of causation evidence in toxic tort cases, "[c]ourts use 'a two-step process . . . . First, the district court must determine whether there is *general causation*. Second, if it concludes that there is admissible general-causation evidence, the district court must determine whether there is admissible *specific-causation* evidence.'" *Seaman v. Seacor Marine, LLC*, 326 F. App'x 721, 722 (5th Cir. 2009) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (emphases added in *Seaman*)). "General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether a substance caused a particular individual's injury." *Id.* (quoting *Knight*, 482 F.3d at 351).

With respect to general causation, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case." *Seaman*, 326 F. App'x at 723 (quoting *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)). "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation." *Id.*

Defendants assert that Cook's general causation opinion should be excluded because it is unreliable to the extent that the opinion: (1) failed to identify which chemicals caused Walker's injuries, and "whether and at what quantity those

chemicals can cause [Walker's] alleged injuries"[32]; (2) failed to verify Walker's diagnosis[33]; and (3) failed to follow accepted methodology for evaluating scientific literature.[34]

This Court will begin by addressing the defendants' first argument for finding Cook's opinion to be unreliable—namely, that the opinion does not identify a harmful level of exposure to an identified chemical and therefore cannot prove general causation. The Court agrees.

This Court has previously excluded this version[35] of Cook's report for failure "to identify a particular chemical and corresponding dose to which [the plaintiff] was exposed." *Turner v. BP Expl. & Prod. Inc.*, No. 17-3225, 2022 WL 2967441, at *5 (E.D. La. July 27, 2022) (Africk, J.) (noting that a previous version of Cook's report suffered from the same flaws, as identified in *Murphy v. BP Expl. & Prod. Inc.*, No. 13-1031, 2022 WL 1460093 (E.D. La. May 9, 2022), and *Novelozo v. BP Expl. & Prod. Inc.*, No. 13-1033, 2022 WL 1460103 (E.D. La. May 9, 2022)); *Keller v. BP Expl. & Prod. Inc.*, No. 13-1018, 2022 WL 2986550 (E.D. La. July 28, 2022) (Africk, J.) (same).

As this Court noted in *Novelozo*, "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such

---

[32] R. Doc. No. 83-1, at 10.

[33] *Id.* at 10–12.

[34] *Id.* at 12–16.

[35] Cook has submitted multiple versions of his general causation report in B3 cases. Courts in this district have excluded them all on the same grounds. *See Barksdale v. BP. Expl. & Prod., Inc.*, No. 17-3034, 2022 WL 2789022, at *2 n.2 (E.D. La. July 15, 2022) (Zainey, J.) (noting that multiple versions of Cook's report have "been repeatedly excluded" on the same grounds).

quantities, are minimal facts necessary to sustain the plaintiffs' burden [as to general causation] in a toxic tort case." 2022 WL 1460103, at *5 (quoting *Seaman*, 326 F. App'x at 722). Several sections of this Court have subsequently concluded that "Cook's failure to identify the level of exposure to a relevant chemical that can cause the conditions asserted in plaintiff's complaint renders his opinion unreliable, unhelpful, and incapable of establishing general causation." *Grant v. BP Expl. & Prod. Inc.*, No. 17-4334, 2022 WL 2467682, at *7 (E.D. La. July 6, 2022) (Vance, J.); *see also Reed v. BP Expl. & Prod., Inc.*, No. 17-3603, 2022 WL 3099925, at *3 (E.D. La. Aug. 4, 2022) (Milazzo, J.); *Favorite v. BP Expl. & Prod., Inc.*, No. 17-3192, 2022 WL 2789029, at *3 (E.D. La. July 15, 2022) (Zainey, J.); *Barkley v. BP Expl. & Prod. Inc.*, No. 13-995, 2022 WL 2342474, at *4 (E.D. La. June 29, 2022) (Barbier, J); *Harrison v. BP Expl. & Prod.*, No. 17-4346, 2022 WL 2390733, at *6 (E.D. La. July 1, 2022) (Morgan, J.); *Street v. BP Expl. & Prod. Inc.*, No. 17-3619, 2022 WL 1811144, at *6 (E.D. La. June 2, 2022) (Ashe, J.).

In prior oppositions to motions to exclude Cook's report, plaintiffs have argued that BP's "failure to conduct dermal and biomonitoring of clean-up workers . . . is evidence that BP consciously, or in the most favorable light negligently, avoided recording data which would show the exposure doses of spill workers." *Milsap v. BP Expl. & Prod. Inc.*, No. 17-4451, 2022 WL 3356343, at *7–8 (E.D. La. Aug. 15, 2022) (Africk, J.). In response to this argument, this Court and others have noted that the availability of data from "the *Deepwater Horizon* oil spill Unified Area Command, which was composed of several federal and state agencies" and "engaged in extensive

16

and coordinated data collection and environmental monitoring efforts," casts doubt on the assertion that there is a lack of monitoring data associated with the spill. *Id.* (citing *In re Deepwater Horizon Belo Cases*, No. 19-963, 2020 WL 6689212, at *4 (N.D. Fla. Nov. 4, 2020), *aff'd sub nom. In re Deepwater Horizon BELO Cases*, 2022 WL 104243 (11th Cir. Jan. 11, 2022); *Peairs v. BP Expl. & Prod., Inc.*, No. 17-3596, 2022 WL 2817852, at *10 n.53 (E.D. La. July 19, 2022) (Vance, J.)).

In their opposition to the instant motion, however, plaintiffs "take[ ] a different tack" than that taken in other B3 cases, "focus[ing] on the scientific robustness of Dr. Cook's reliance literature and the fact that there are no alternative studies on which he could properly rely to support his opinions."[36] In support of this argument, they provide an affidavit by Dr. Linda Birnbaum ("Birnbaum"), who was the Director of the National Institute of Environmental Health and Sciences ("NIEHS") from 2009 to 2019.[37] In the affidavit, Birnbaum states that "[t]he proposition that it is possible to establish a BP Oil Spill responder's quantitative exposure to a given chemical at a given level based on the data that was collected . . . is not plausible."[38] She also states that "the proposition that it is possible today to establish a BP Oil Spill responder's quantitative exposure to a given chemical at a given level based on studies of other oil spills and non-oil spill related studies of exposure to crude oil, is not plausible."[39] She further states that the GuLf Study's "exposure assessment and epidemiology are

---

[36] R. Doc. No. 89, at 2.
[37] R. Doc. No. 89-1, at 1.
[38] *Id.* at 6–7.
[39] *Id.* at 7.

the current, best, and state of the art scientific literature on the exposure and health effect outcomes of BP Oil Spill responders."[40]

Birnbaum's affidavit neither cures nor explains the deficiencies of Cook's report.[41] As defendants point out in their reply in support of their motion,[42] the question of an individual oil responder's exposure level is relevant to specific causation, not general causation. "The fundamental question in [the] general causation inquiry is whether the chemicals, weathered oil, and dispersants to which [plaintiff] alleges he was exposed can cause the conditions he alleges." *Bass v. BP Expl. & Prod.*, No. 17-3037, 2022 WL 2986276, at *4 (E.D. La. July 28, 2022) (Morgan, J.). Cook's report fails "to identify the level of exposure to a relevant chemical that can cause the conditions asserted in plaintiff's complaint" and therefore cannot show general causation. *Grant*, 2022 WL 2467682, at *7. The alleged impossibility of "establish[ing] a BP Oil Spill responder's quantitative exposure to a given chemical at a given level"[43] does not affect Cook's ability to "consult the relevant scientific and medical literature on the harmful effects of oil to determine whether a relevant chemical has the capacity to cause the harm alleged by plaintiff in the general population." *Dawkins v. BP Expl. & Prod.*, No. 17-3533, 2022 WL 2315846, at *10

---

[40] *Id.*

[41] Cook's report does not rely on or reference Birnbaum's declaration. Expert reports must contain "the basis and reasons for" the expert's opinions and "the facts or data considered" in forming those opinions. Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). As defendants point out, plaintiffs have provided no basis for concluding that Cook agrees with or has considered Birnbaum's opinions. R. Doc. No. 97, at 7–8.

[42] R. Doc. No. 97, at 5.

[43] R. Doc. No. 89-1, at 7.

(E.D. La. June 28, 2022) (Vance, J.).

Likewise, assuming that the GuLF Study is indeed the best scientific literature regarding "the exposure and health effect outcomes of BP Oil Spill responders,"[44] Cook still was not limited to consulting only studies of the *Deepwater Horizon* spill when forming his opinion as to general causation. *See id.* ("Cook was not prevented from consulting the relevant scientific and medical literature on the harmful effects of oil to determine whether a relevant chemical has the capacity to cause the harm alleged by plaintiff in the general population. He was not limited to data from the *Deepwater Horizon* oil spill[.]")

Because Cook's report does not explain whether the chemicals to which Walker was allegedly exposed can, in general, cause the conditions from which he allegedly suffers, nor at what levels such exposure is harmful, the report does not support plaintiffs' burden of establishing the "minimal facts necessary to sustain" their claims. *Seaman*, 326 F. App'x at 723. On this basis alone, the Court concludes that Cook's report should be excluded. *See Johns*, 2022 WL 1811088, at *4 (excluding Cook's report for its failure to "identify the harmful dose of any chemical to which [plaintiff] was exposed" and declining to address arguments as to verification of diagnosis, methodological analysis, or reliance on other scientific studies).

Defendants also argue that Cook failed to verify Walker's diagnosis, further rendering his opinion unreliable.[45] Plaintiffs respond that Cook did verify Walker's

---

[44] *Id.*

[45] R. Doc. No. 83-1, at 10.

diagnosis in his specific causation report, which discusses Walker's medical conditions, including dermatitis, at length.[46] Defendants do not address this argument in their reply, confusingly asserting that plaintiffs did not rebut defendant's argument as to Cook's lack of diagnosis verification.[47] Because the Court has determined that Cook's report should be excluded on other grounds, the Court does not address this argument. Likewise, the Court finds it unnecessary to address the parties' arguments regarding the methodology Cook used when analyzing the scientific literature on which he relies.[48]

Cook's failure to identify a harmful level of exposure when evaluating the scientific literature referenced in his report renders his opinions unhelpful and unreliable in establishing general causation. The Court therefore concludes that Cook's opinions are inadmissible. Fed. R. Evid. 702(a), (c), (d). With Cook's report excluded, Walker cannot establish general causation, and the Court therefore finds it unnecessary to reach the parties' arguments as to specific causation. *See Novelozo*, 2022 WL 1460103, at *9 n.65 ("'Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.'" (quoting *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012))).

---

[46] R. Doc. No. 84-8.

[47] R. Doc. No. 97, at 2.

[48] Defendants argue that "Cook does not identify which of his literature sources demonstrate an association between exposure to the constituents of crude oil or dispersants and the specific health conditions at issue with Walker." R. Doc. No. 83-1, at 14. Plaintiffs respond by pointing out that "Cook's general causation report address[es] strength of association related to dermatitis by discussing the studies upon which he relies." R. Doc. No. 89, at 7 (citing R. Doc. No. 83-5, at 88–89).

### B.    Walker's Motion to Supplement Expert Report

Plaintiffs seek leave to allow Jones, their previously disclosed industrial hygiene expert, to supplement her expert report.[49] The proposed supplemental report is a three-page document that, as plaintiffs put it, "refers to the affidavit of Dr. Birnbaum"—the same affidavit that plaintiffs attempt to use to bolster Cook's report, as discussed above.[50] Plaintiffs argue that this supplemental report will "clarify that the exposure assessments used for the Walker expert reports are from the 'state of the art' scientific literature from the GuLF Study."[51]

Both parties recognize that the proposed supplemental expert report is untimely, as plaintiffs' expert reports were due on March 9, 2022.[52] In considering plaintiffs' motion, therefore, the Court considers: (1) the importance of the proposed testimony, (2) the party's explanation for its failure to comply with the court's scheduling order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice. *Harmon*, 476 F. App'x at 36.

As to the first factor, Walker argues that the proposed supplemental report is important because Birnbaum has "expertise and factual knowledge" about the scientific studies of the oil spill.[53] However, as defendants point out, and as this Court

---

[49] R. Doc. No. 82.
[50] R. Doc. No. 82-1, at 2. Birnbaum's affidavit is attached as an exhibit to Jones' proposed supplemental report. R. Doc. No. 87-1.
[51] R. Doc. No. 82-1, at 2.
[52] R. Doc. No. 39, at 2 (scheduling order).
[53] R. Doc. No. 82-1, at 3.

discussed above, Birnbaum's affidavit does not cure Walker's inability to show causation. That inability is fatal to the plaintiffs' claims. Therefore, the importance of the proposed supplemental report is minimal.

As to the second factor, plaintiffs' explanation for the timing of their motion is that, after they timely produced Jones' expert report, BP produced an email from Dr. Richard Heron ("Heron"), which mentioned Birnbaum's involvement in the oil spill cleanup.[54] Plaintiffs state it is through this email that their counsel "discovered" Birnbaum's involvement in the oil spill response.[55]

After a U.S. Magistrate Judge granted plaintiff's motion for sanctions against BP in another BP case, plaintiff's counsel re-deposed Heron pursuant to Federal Rule of Civil Procedure 30(b)(6), and then sent Heron's deposition testimony to Birnbaum.[56] Since then, plaintiff's counsel "has been working with Dr. Birnbaum to produce an affidavit with factual and opinion testimony that contradicts much of the [deposition] testimony from Dr. Heron."[57] Plaintiffs do not explain, however, why they only became aware of Birnbaum's involvement in the oil spill after BP produced this email. As BP points out, NIEHS's involvement with oil spill cleanup and monitoring was a matter of public record, as was Birnbaum's role at the agency.[58] Plaintiffs'

---

[54] *Id.* at 1.

[55] *Id.*

[56] *Id.* at 2.

[57] *Id.*

[58] R. Doc. No. 87, at 5 nn.10–11 (providing links to NIEHS website pages that announce the agency's involvement in the oil spill and document Birnbaum's tenure at the agency).

explanation for their failure to comply with the scheduling order therefore weighs against allowing the supplemental report.

As to the third factor, Walker argues that allowing Jones' supplemental report would not prejudice BP, because the trial is set for February 3, 2023, allowing BP time to depose Birnbaum regarding her affidavit.[59] However, an untimely expert report that requires an opposing party to conduct additional discovery and otherwise disrupts preparation and strategy may be prejudicial. *S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Geiserman*, 893 F.2d at 791. Moreover, plaintiffs filed this motion the same day that BP filed their motion *in limine* and motion for summary judgment. The deadline for filing motions *in limine* regarding testimony by expert witnesses has passed. Therefore, unless the Court were to grant a continuance of the deadlines for such motions, BP would be unable to challenge the opinions contained in the proposed supplemental expert report. This factor weighs against granting plaintiffs' motion.

Finally, as to the fourth factor, a continuance could allow BP sufficient time to prepare for trial if Jones' supplemental report were allowed. However, a continuance that "result[s] in unnecessary delay and expense" and forces a party to "prepare for trial once more" causes prejudice. *Thonn v. MLH Realty, LLC*, No. 11–2123, 2012 WL 6482991, at *2 (E.D. La. Dec. 12, 2012) (Africk, J.); *Henderson v. Atmos Energy*, No. 19-13072, 2020 WL 6131164, at *3 (E.D. La. Oct. 19, 2020) (Africk, J.). This weighs

---

[59] R. Doc. No. 82-1, at 3.

against granting plaintiffs' motion. Therefore, the Court determines that Walker's motion should be denied.[60]

## C.   Plaintiffs' Spoliation Allegations

As in other B3 cases, plaintiffs argue that defendants spoliated evidence by not collecting quantitative biological or dermal monitoring data from oil spill responders.[61] They further argue that this Court should redress this alleged spoliation by admitting Cook's general causation report.[62]

As stated, to establish spoliation, plaintiffs must show (1) that defendants "controlled the evidence" and were "under an obligation to preserve it," (2) that defendants intentionally destroyed the evidence, and (3) that defendants acted in bad faith. *Coastal Bridge Co.*, 833 F. App'x at 574. Plaintiffs have not made this showing.

"First and foremost, there is no allegation that BP destroyed, altered, or failed to preserve any *existing* evidence." *Fairley*, 2022 WL 16731817, at *3 (emphasis in original). Instead, plaintiffs argue "that BP failed to *develop* evidence that might at some future day have aided potential plaintiffs in making claims against BP." *Id.* (emphasis in original). It is well established, however, that parties have no duty to create evidence. *Id.* Courts in this district have determined, in other B3 cases, that plaintiffs' theory of spoliation "is contrary to existing law." *Bland v. BP Expl. & Prod.*,

---

[60] Because the Court has determined, pursuant to Rule 16(b), that Birnbaum's testimony should not be allowed, it does not address BP's argument that the affidavit does not comply with Federal Rule of Civil Procedure 26, which sets out requirements for expert reports.

[61] R. Doc. No. 85-1.

[62] *Id.* at 23 ("All that Plaintiff seeks is that Dr. Cook's opinions . . . be deemed reliable and admissible under *Daubert*.").

*Inc.*, No. 17-3049, 2022 WL 17155686, at *11 (E.D. La. Nov. 22, 2022) (Vance, J.); *accord Fairley*, 2022 WL 16731817, at *3. This Court agrees with that assessment.

Even if plaintiffs could establish that defendants had a duty to create evidence by collecting biological and dermal monitoring data from oil spill responders, plaintiffs have not established the third element of a spoliation claim: that defendants acted in bad faith. *Coastal Bridge Co.*, 833 F. App'x at 574. In the context of spoliation, bad faith "generally means destruction for the purpose of hiding adverse evidence." *Fairley*, 2022 WL 16731817, at *3 (citation and quotation omitted).

Plaintiffs focus on the fact that BP did not conduct biological or dermal monitoring of oil spill workers despite proposals by two government agencies, the National Institute of Occupational Safety and Health ("NIOSH") and National Institute of Environmental Health Sciences ("NIEHS"), to do so.[63] As defendants point out,[64] and other courts in this district have recognized, the federal government directed the oil spill response, and the federal entities that plaintiffs refer to in their motion themselves decided against the proposed monitoring. *Campbell v. BP Expl. & Prod. Inc.*, No. 17-3119, 2022 WL 17251115, at *11 (E.D. La. Nov. 28, 2022) (Vance, J.); *Fairley*, 2022 WL 16731817, at *4; *Backstrom v. BP Expl. & Prod. Inc.*, No. 17-3029, 2022 WL 2342390, at *5 (E.D. La. June 29, 2022) (Barbier, J.). Though plaintiffs

---

[63] *Id.* at 11–15.
[64] R. Doc. No. 100, at 16–17, 19.

argue that the decision not to conduct the monitoring was scientifically wrong, they point to no evidence suggesting that the decision was made in bad faith.[65]

Finally, the relief that plaintiffs seek for defendants' alleged spoliation "is wholly unwarranted." *Campbell*, 2022 WL 17251115, at *12. Plaintiffs provide no legal support for their theory that admission of an otherwise inadmissible expert report is an appropriate remedy for alleged spoliation. Moreover, for the reasons set out in this opinion, the flaws in Cook's general causation report are unrelated to defendants' failure to perform dermal monitoring of oil spill workers. For all these reasons, the Court finds that plaintiffs' spoliation argument is without merit. The motion for admission of Cook's report due to defendants' alleged spoliation will therefore be denied.

### D.    Defendants' Motion for Summary Judgment

Having determined that Cook's report should be excluded, and that plaintiffs' motion to supplement their expert report should be denied, the Court now turns to defendants' motion for summary judgment. The issue of general causation is a necessary element of plaintiffs' claims against defendants.

---

[65] Plaintiffs argue that Heron's deposition testimony regarding monitoring is "dubious," pointing to the Birnbaum affidavit and another affidavit by Dr. David Michaels, former Assistant Secretary of Labor for OSHA. Though Heron testified that BP did not conduct dermal monitoring because OSHA told them not to, Michaels' affidavit states that Michaels has no recollection of such a discussion. R. Doc. No. 85-19. Michaels does not state, however, that the federal government ever directed BP to conduct monitoring. Birnbaum's affidavit states that the decision not to conduct monitoring was "scientifically and factually wrong," but also states that Birnbaum "cannot speak as to the beliefs of BP." R. Doc. No. 85-26, at 3. Neither of these affidavits establish that defendants' failure to conduct monitoring was done in bad faith.

Plaintiffs assert that "this Court has already determined that [Walker's] claims related to [his] anxiety and depression that arise out of his ordeal with exposure and his various physical conditions can go to trial without supporting expert testimony."[66] In its prior order and reasons, this Court indeed noted that, to the extent Walker was alleging that his anxiety and depression were "mental pain and suffering damages" that arose "due to the hardship of his alleged ordeal with exposure and various physical injuries and conditions," expert testimony as to medical causation might not be required.[67] The Court also noted, however, that if Walker was alleging neurological damage arising directly from alleged exposure, expert testimony as to both general and specific medical causation would be required.[68] In the filings currently before the Court, Walker has not clarified the nature of his alleged mental injuries.

Even assuming that Walker alleges the sort of mental pain and suffering damages that might not require expert causation testimony, such damages are not generally available unless the plaintiff shows an accompanying physical injury. *Prest v. BP Expl. & Prod. Inc.*, No. 17-3409, 2022 WL 16832820, at *6 (E.D. La. Nov. 9, 2022) (Ashe, J.) (citing *SCF Waxler Marine, L.L.C. v. M/V Aris T*, 24 F.4th 458, 476 (5th Cir. 2022)). Absent physical injury, a plaintiff may recover emotional distress damages under the "zone-of-danger" theory by showing that he was "placed in

---

[66] R. Doc. No. 88, at 2.
[67] R. Doc. No. 69, at 10–11.
[68] *Id.* at 10.

immediate risk of physical harm by [the defendant's] conduct." *SCF Waxler Marine*, 24 F.4th at 476 (quotation omitted).[69]

In *Prest*, another B3 case in this district, the court granted summary judgment on the plaintiff's non-neurological emotional distress claim due to the plaintiff's inability to show the predicate physical injury. The *Prest* court also noted that the plaintiff, who like Walker was employed in the Vessels of Opportunity program, could not show that he was within the "zone of danger" of the oil spill, since he could not show that "he (1) was at the same location where people got injured by the alleged negligent conduct . . . ; (2) could not leave the dangerous area . . .; or (3) experienced a near-miss collision." . *Prest,* 2022 WL 16832820, at *6.

As the exclusion of Cook's report prevents Walker from proving his physical injury claims, he cannot show a predicate physical injury to support an emotional distress claim. And, as in *Prest*, he has not pled facts supporting application of the zone-of-danger theory. Therefore, summary judgment as to Walker's emotional injury claim is justified.[70]

---

[69] The Fifth Circuit has not settled the issue of whether the zone-of-danger tort theory is available under maritime law. *See SCF Waxler Marine*, 24 F.4th at 476.

[70] Alternatively, these claims are barred because his alleged mental-health injuries were not disclosed on his Pretrial Order 68 Form. The Pretrial Order 68 Form is a form on which B3 plaintiffs were to disclose any medical conditions that the plaintiff alleged resulted from exposure to oil or dispersants. R. Doc. No. 84-3. The Fifth Circuit has affirmed a district court's dismissal of claims for failure to disclose medical conditions on the Pretrial Order 68 Form. *In re Deepwater Horizon*, 17 F.4th 528 (5th Cir. 2021).

Because Roxanne Walker's claim for loss of consortium is based on her husband's alleged injuries, the lack of general causation evidence as to his injuries is likewise fatal to her claim.[71]

Cook is Walker's sole expert on general causation. With Cook's opinion on general causation now excluded, Walker lacks expert testimony with respect to general causation. As a result, Walker has failed to present a genuine issue of material fact with respect to his claims that his injuries were caused by exposure to oil and dispersants. Accordingly, defendants are entitled to summary judgment. *See, e.g.*, *Reed*, 2022 WL 3099925, at *3; *Favorite*, 2022 WL 2789029, at *3; *Grant*, 2022 WL 2467682, at *12; *Barkley*, 2022 WL 2342474, at *6; *Harrison*, 2022 WL 2390733, at *7; *Street*, 2022 WL 1811144, at *7; *Novelozo*, 2022 WL 1460103, at *10.

## IV.   CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that the motion *in limine* to exclude the causation testimony of Dr. Jerald Cook is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to supplement their expert report is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for admission of their expert report is **DENIED**.

---

[71] *See* R. Doc. No. 1, ¶ 152 (alleging that "[a]s a result of defendant's fault, Plaintiff, Roxanne Walker has and will have a loss of consortium due to the injuries to her husband.").

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment is **GRANTED** and plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, December 28, 2022.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**